# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| THERESA ANN HILL, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 3:14-CV-2073-TLS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Theresa Ann Hill, seeks review of the final decision of the Commissioner

of the Social Security Administration denying her application for Disability Insurance Benefits

(DIB). On March 15, 2012, the Plaintiff protectively filed an application for DIB, alleging

disability beginning on March 3, 2012. The Plaintiff alleges multiple impairments, including:

post-traumatic stress disorder; major depressive disorder with psychotic features; generalized

anxiety disorder; and obsessive-compulsive disorder.

An ALJ held a hearing on July 2, 2013, at which the Plaintiff—who was represented by

an attorney—and a vocational expert both testified. On August 29, 2013, the ALJ found that the

Plaintiff was not disabled. The Plaintiff requested review of the ALJ decision from the Appeals

Council and, subsequently initiated this civil action for judicial review of the Commissioner's

final decision. For the reasons set forth in this Opinion and Order, the ALJ's decision is reversed

and remanded.

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals

Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009).

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In

reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is

severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d

995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide

questions of credibility, or, in general, substitute [its] own judgment for that of the

Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual

findings are supported by substantial evidence." *Id.* (citing § 405(g)). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be

less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if

"reasonable minds could differ" about the disability status of the claimant, the court must affirm

the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408,

413 (7th Cir. 2008).

"In addition to relying on substantial evidence, the ALJ must also explain his analysis of

the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir.2005). The ALJ is not required to address

every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge"

between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to

prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940

(7th Cir. 2002). If the Commissioner commits an error of law, remand is warranted without

regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d

780, 782 (7th Cir. 1997).

## ANALYSIS

Disability benefits are available only to those individuals who can establish disability

under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The claimant must show that his "impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security regulations set forth a five-step sequential evaluation process to be

used in determining whether the claimant has established a disability. *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v). The first step is to determine whether the claimant is presently engaged in

substantial gainful activity (SGA). Here, the Plaintiff was not engaged in SGA, so the ALJ

moved on to the second step, which is to determine whether the claimant had a "severe"

impairment or combination of impairments. An impairment is severe if it significantly limits the

claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The

ALJ determined that the Plaintiff had the following severe impairments: post-traumatic stress disorder; major depressive disorder; general anxiety disorder; obsessive-compulsive disorder; obesity; and degenerative disc disease to the lumbar spine.

At step three, the ALJ concluded that the Plaintiff did not have an impairment, or combination of impairments that meets or medically equals the severity of one of the impairments listed by the Social Security Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. With respect to her mental impairments, the ALJ concluded that they caused mild limitations in her activities of daily living, and moderate limitations in her ability to maintain social functioning, and to maintain concentration, persistence, or pace.

Because the Plaintiff's impairment was found not to meet or equal a listed impairment, the ALJ was required, at step four, to examine the Plaintiff's residual functional capacity (RFC). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of her impairments. SSR 96–8p. The ALJ concluded that the Plaintiff had the RFC to perform light work, with exceptions. She could lift 20 pounds occasionally and up to 10 pounds frequently. She could stand and/or walk up to 6 hours in an 8-hour day, and sit for up to 6 of those hours. Mentally, the ALJ found the Plaintiff to be limited to "simple tasks and work-related decisions." (R. at 26.) And while "she is not able to perform work at a production rate, [she] can perform goal-oriented work." (*Id.*) Additionally, the Plaintiff is "limited to occasional interactions with her supervisors and co-workers and is never to interact with the public." (*Id.*)

The ALJ found that the Plaintiff could not perform any past relevant work, but at the final

step of the evaluation, determined that, in light of the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform (i.e., laundry folder, hand washer, and sorter).

On appeal, the Plaintiff contends that, in determining her RFC, the ALJ (1) failed to provide sufficient reasons for not giving controlling weight to the opinion of her treating psychologist; (2) improperly assessed less restrictive social limitations than the state agency psychologist consultants assessed, while declaring their opinions to be consistent with his conclusion; and (3) improperly discredited the Plaintiff's allegations of disabling social restrictions.

## A.      Opinion of Treating Psychologist

The Plaintiff contends that the ALJ improperly discounted the opinion of Dr. Sue Ellen Peters, the Plaintiff's treating psychologist. She maintains that the rejection of Dr. Peters' opinion caused the ALJ to craft an erroneous RFC.

If a treating physician's opinion on "the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the [ALJ] must give it controlling weight." SSR 96-8p; 20 C.F.R. § 404.1527(c)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The regulations provide that more weight is generally given to the opinion of treating sources who have (1) examined a claimant; (2) treated a claimant frequently and for an extended period of time; (3) specialized in treating the claimant's condition; (4) performed appropriate diagnostic tests on the claimant; and (5) offered opinions

that are consistent with objective medical evidence and the record as a whole.

§ 404.1527(c)(2)(i), (ii). If the ALJ does not give a treating source's opinion controlling weight,

the ALJ must consider various factors to determine the weight to assign the opinion. These

include the length, nature, and extent of the claimant's relationship with the treating physician;

whether the opinion is supported by relevant evidence; the opinion's consistency with the record

as a whole; and whether the physician is a specialist. § 404.1527(c). Thus, an ALJ may discount

a treating source's medical opinion if it is internally inconsistent or inconsistent with other

evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). The ALJ must give

"good reasons" to support the weight he ultimately assigns to the treating source's opinion.

§ 404.1527(c).

In May 2013, Dr. Peters provided a report. The ALJ acknowledged the report and

described its content as follows:

> Dr. Peters reported that the claimant had been laid off for a year and half causing
> her to receive unemployment from January 2012 through April 2013. It was noted
> that the claimant suffered from severe anxiety causing her to have a panic attack
> when she would leave her home. Her symptoms of depression included not
> completing basic grooming or self-care tasks and in addition, she avoided all
> people to the point, she left her home only once a week for errands. Occasionally,
> she would see things and hear voices. In addition, she has had suicidal thoughts
> and claims that she hates everyone. Further, she has some obsessive-compulsive
> tendencies. The claimant also suffered from PTSD from prior childhood abuse
> causing her to be angry, hypervigilant and paranoid. Dr. Peters opined that based
> on the severity of her mental impairments, it would prevent her from performing
> any kind of substantial work and it was expected that it would last for at least 12
> months. She would also be prone to become angry and aggressive and in addition,
> she experienced side effect to her medication, which would affect her ability to
> consistently work.

(R. at 30.) The ALJ gave this opinion "little weight," and cited several reasons for doing so.

First, the ALJ stated that Dr. Peters failed to provide "specific limitations as to what the claimant

is able or unable to do." (*Id.*) In addition, "the ultimate determination of whether a person is able to work is reserved for the Commissioner." (*Id.*) The ALJ thought that Dr. Peters' opinion was "inconsistent with her prior GAF score findings that show the claimant was at most moderately limited in the area of social occupational or educational functioning for the past year and thus, the claimant's mental impairments would not prevent the claimant from all work as Dr. Peter[s] has opined." (*Id.*) Lastly, the ALJ "question[ed] the severity of the claimant's anxiety and inability to be around people, as she was able to ride a skateboard at a child's birthday party and admits that she continues to leave the home for shopping and running errands." (*Id.*)

On appeal to this Court, the Plaintiff takes issue with the ALJ's finding that Dr. Peters did not provide specific limitations as to what the Plaintiff is able or unable to do. She submits that Dr. Peters opined that the Plaintiff would not be able to function within any type of work environment because the lability of her moods would make it impossible for her to leave the house on a regular basis, and that she was prone to angry and aggressive outbursts when she does not like the way things are going. Certainly, such statements offer specific limitations as to what the Plaintiff is able and not able to do, and directly relate to the ability to sustain full-time employment outside of the home. Therefore, the Plaintiff's arguments on this point are well taken.

The Plaintiff also challenges the ALJ's reliance on the Plaintiff's daily activities to discount Dr. Peters' conclusions regarding her social restrictions. She argues that neither the fact that she rode a skateboard at a child's birthday party nor the fact that she left her home to shop or run errands contradicts Dr. Peters' specific finding that the Plaintiff could not leave home "on a regular basis," or that she would be prone to angry and aggressive outbursts or panic attacks

7

when she did. Again, this point is well taken. The ALJ does not mention the qualifiers

surrounding the Plaintiff's activities outside her house; such as the fact that it occurred only once

per week for a couple of hours; that the Plaintiff became upset while in stores; and that she only

went to the store with her boyfriend, who assisted her by dealing with the clerks. The Plaintiff

also testified that four months before her hearing she had attacked a woman who stood in front of

her car by pushing her to the ground and then driving away without regard for the fact that the

woman was still on the ground and her legs were in the path of the Plaintiff's car. (R. at 70.)

Although this goes directly to Dr. Peters' finding that the Plaintiff would be prone to angry and

aggressive outbursts, the ALJ does not address it. The ALJ did note that there was evidence in

the record that the Plaintiff experienced social anxiety and had difficulty getting along with

people, and opined that the "evidence shows that this anxiety is mainly exacerbated when

dealing in public settings." (R. at 33.) Thus, the ALJ appears to acknowledge the Plaintiff's

difficulties functioning in public settings, while at the same time discounting Dr. Peters' opinion

based on the fact that she still went out in public. Additionally, the ALJ does not articulate how a

public setting, such as a grocery store, could trigger anxiety, but a work environment that

required occasional interactions with supervisors and co-workers would not.

The Plaintiff also asserts that the ALJ improperly concluded that Dr. Peters' opinion was

inconsistent with the GAF scores of 55 that she had assigned to the Plaintiff during treatment.

The ALJ concluded that these GAF scores showed that the Plaintiff was "at most moderately

limited in the area of social, occupational or education functioning," and thus, "would not

prevent the [Plaintiff] from all work." (R. at 30.) The Plaintiff argues that the ALJ does not

explain how a GAF score of 55, which reflects moderate symptoms, contradicts Dr. Peters'

opinion that the Plaintiff would have difficulty engaging in appropriate social interactions and would therefore have difficulty leaving her home on a regular basis. It appears that what the ALJ is really questioning is Dr. Peters' conclusion about the ability to perform any work. But Dr. Peters' conclusions on that issue were based on specific symptoms of her mental impairments, as well as on the side effects from her medications, including dizziness and fatigue. Pointing to GAF scores, without a discussion of the symptoms that Dr. Peters highlighted as problematic for consistent functioning within the work environment, does not provide enough detail and clarity to permit meaningful appellate review.

Based on the foregoing, the Court finds that the case must be remanded for the ALJ to reconsider the weight to assign to Dr. Peters' opinion.


**B.      Interactions with Supervisors and Co-workers**

The ALJ noted that the DDS State agency psychological consultative examiners found that the Plaintiff was moderately limited in her social functioning, and opined that the Plaintiff would be limited, in terms of frequency and intensity, to superficial interactions with her co-workers and supervisors. The ALJ gave the opinion some weight, specifically agreeing with the moderate social functioning. However, when fashioning the RFC, the ALJ limited only the Plaintiff's frequency of interactions with supervisors and co-workers, but did not address the intensity of such interactions. For example, there is no distinction between vicinity and job-task interactions that would suggest the ALJ gave any weight to the examiners' limitations to superficial interactions. On remand, the ALJ should clarify the weight he assigned to the consultative examiners' findings, and revise the RFC if necessary.

## C.     The Plaintiff's Credibility

An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong. *Craft*, 539 F.3d at 678. However, the determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning. *Id.* To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. The ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)–(4) and *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)).

In assessing the credibility of the Plaintiff's statements, the ALJ identified the following as factors he would consider: the objective medical evidence; the location, duration, frequency, and intensity of her symptoms; the type, dosage, effectiveness, and side effects of any medication the Plaintiff takes or has taken to alleviate pain or other symptoms; treatment, other than medical, that the Plaintiff receives or has received; work history; and activities of daily living. (R. at 31) (citing SSR 96-7p).

The ALJ determined that a number of the factors weighed against the credibility of the Plaintiff's allegations that her impairments were so severe that they caused her to be unable to work. Specifically, he noted that she had been laid off from her previous employment—not fired due to her impairments—and was eligible for re-hire. She also received unemployment benefits after the date she claimed to be disabled, for which she had to certify that she was physically and

10

mentally able to work full time. The ALJ also thought that the Plaintiff's daily activities, conservative treatment, and GAF scores weighed against her credibility regarding the severity of her symptoms. The ALJ thought that external stressors and public settings triggered her most severe symptoms. The Court will address several of these findings, as they have been challenged by the Plaintiff on appeal.

The ALJ stated that the Plaintiff was only treated conservatively for her mental impairments, specifically noting that she "failed to go to therapy twice a week as ordered." (R. at 33.) Although the record does not show that the Plaintiff was ordered to attend psychotherapy twice a week, it does show that the Plaintiff stated that she could not afford to attend psychotherapy twice a week. (R. at 419.) The examiner, who she was seeing for medication management, wrote: "She is probably able to be helped by medication, but the help should be directed toward enhancing her pshychotherapy. At this point, she says that she can't afford to come to psychotherapy twice a week. I'm not sure what that means, but it probably means that she'd have to get rid of [her boyfriend]. If she were going twice a week, she'd figure out something about the nature of that attachment that would be quite unsatisfactory." (*Id.*) The ALJ did not discuss any explanations for the conservative treatment (if weekly therapy and taking Prozac, clonidine, Klonopin, and Vyvanse can be considered "conservative"). *See* SSR 96 7P, 1996 WL 374186, at *7 (ALJs must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"); *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (remanding to agency where ALJ made no attempt to determine reason for conservative treatment). Regardless of whether the inability to afford psychotherapy more than once per week

referred to financial constraints or had to do with her relationship with her boyfriend, it was still an explanation that should have been discussed if the ALJ was going to rely on conservative treatment as a reason to doubt the Plaintiff's credibility.

The ALJ did discuss the Plaintiff's relationship with her boyfriend as part of another basis for discounting the seriousness of her symptoms. He wrote that it was "clear from the record that external stressors resulting from the claimant's familial, financial, and relationship difficulties are significantly contributing to, if not causing, the claimant's alleged symptoms of anxiety and depression." (R. at 32.) He opines that the Plaintiff's conditions would improve dramatically if these factors were minimized or eliminated. The ALJ's conclusion is not supported by any medical evidence in the record; it amounts to the ALJ improperly "playing doctor." *See Engstrand v. Colvin*, 788 F.3d 655, 660–61 (7th Cir. 2015); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). Absent evidentiary support, the ALJ's explanation amounts to nothing more than speculation. *White ex. rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence.") Moreover, the ALJ's discussion of the potential cause of her anxiety and depression does not build a bridge from the evidence to the conclusion that she was not credible about experiencing these conditions and their related symptoms.

As part of the credibility analysis, the ALJ noted that "[w]hile there is some indication that she has anxiety and difficulty to get [sic] along with people, her ability to go to social functions, such as a child's birthday party and participate in the activities, suggest that she is at most moderately limited in her social functioning." (R. at 32.) The ALJ is referencing the fact that, in June 2013, the Plaintiff was transported to the emergency room after falling off a

12

skateboard at a child's birthday party. The emergency room records indicate that the place of the

accident was home. There is no indication in the record regarding how many people attended the

party, or how long the Plaintiff attended. The Plaintiff testified that her boyfriend had two

children, and that the children's mother lived nearby. In any event, the isolated event cannot

support such a broad statement about the Plaintiff's ability to attend social functions. Nor does

the event contradict the Plaintiff's testimony that she struggled with being confined indoors with

other people, or that she became aggressive during her interactions with others in work settings

and in public. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting that the ALJ has

an obligation to consider all relevant evidence and cannot "cherry-pick" facts that support a

finding of non-disability while ignoring evidence that points to a disability finding). While the

Court is mindful that an ALJ's credibility determinations are entitled to special deference, *Sims

v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006), the ALJ is still required to "build an accurate and

logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th

Cir. 2000) (internal quotation marks omitted); SSR 96-7p (an ALJ must "consider the entire case

record and give specific reasons for the weight given to the individual's statements").

The ALJ also cites valid reasons for questioning the Plaintiff's statements that the

severity of her impairments cause her to be unable to work. The report of the Plaintiff's former

employer, completed by Kenneth Wisjzorek, provides some evidence that the Plaintiff may be

able to work, even in proximity to other people. The Plaintiff was laid off, but would be

considered for re-hire despite the fact that she alienated some of her peers, belittled them for

making mistakes, used bad language, did not take criticism well, and denied making mistakes.

However, she completed most of her tasks without being distracted by others on the assembly

floor. The Plaintiff criticizes the ALJ's reliance on Wisjzorek's report by doing her own cherry

picking of his comments and asking the Court to reweigh the evidence.

The ALJ also found that the Plaintiff's collection of unemployment was relevant because

she had to certify that she was ready, willing, and able to work in order to receive unemployment

benefits. (Tr. 31). As the ALJ noted, a claimant's collecting unemployment is a factor that an

ALJ can consider in weighing the claimant's subjective complaints . *See Schmidt v. Barnhart*,

395 F.3d 737, 746 (7th Cir. 2005). The ALJ did not place any undue emphasis on this factor, but

noted it along with several other factors, in accordance with the regulations and SSR 96-7p (Tr.

27–33). However, the Court considers the ALJ's decision as a whole, and finds that the ALJ

must re-evaluate the credibility of the Plaintiff's statements under SSR 96-7p, as several of the

ALJ's conclusions were not supported by the record.


## CONCLUSION

For the reasons stated above, the decision of the ALJ is reversed and remanded for

further proceedings consistent with this decision pursuant to sentence four of 42 U.S.C. § 405(g).

SO ORDERED on December 14, 2015.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION